THOMAS, J.,
for the Court:
¶ 1. Katrina Dianna Curtis appeals the Sunflower County Circuit Court’s decision finding in favor of the defendant, Bellwood Farms, Inc., for personal injuries sustained as a result of the negligence of Walter Smith, an employee, servant and agent of Bellwood, acting within the course of his employment. Aggrieved, Curtis assigns the following issues as error
I. DID THE TRIAL JUDGE COMMIT REVERSIBLE ERROR IN NOT GRANTING PLAINTIFF’S ORE TENUS MOTION FOR MISTRIAL AND PLAINTIFF’S MOTION FOR A NEW TRIAL BASED ON DEFENDANT’S ATTORNEY’S MISCONDUCT IN THEIR CROSS-EXAMINATION OF DR. MICHAEL F. ANGEL AND KATRINA DIANNA CURTIS.
II. DID THE JUDGE COMMIT REVERSIBLE ERROR IN NOT GRANTING PLAINTIFF- A NEW TRIAL BASED ON THE FACTS PRESENTED TO THE COURT BY PLAINTIFF’S ATTORNEY, CARVER RAN-DLE, WHICH WERE THE SUBJECT OF POST-TRIAL HEARINGS, REGARDING JURY MISCONDUCT DURING JURY DELIBERATIONS AND THE AFFIDAVIT OF JUROR, BEULAH GREEN?
¶ 2. Finding no error, we affirm.
FACTS
¶ 3. Walter Smith was driving a truck for Bellwood Farms, Inc. on April 4, 1995, when a collision occurred between his vehicle and Katrina Curtis’s vehicle. Smith testified that he was traveling south from Drew, Mississippi on Highway 49 when Curtis, the plaintiff-appellant, pulled out in front of him from a side road traveling at approximately thirty-five miles per hour. Smith went on to testify that he was fully established in the left-hand lane and had begun to pass Curtis’s Ford Festiva when Curtis turned her vehicle left into Smith’s lane, directly into the path of his vehicle. This occurred approximately in front of the driveway to P & J Meats. Smith stated that he swerved in an attempt to avoid the accident, causing his truck to turn over. The left front quarter panel of Curtis’s vehicle and the right front corner of Smith’s truck was damaged.
¶ 4. Curtis testified that she has no memory of the events immediately before or during the accident. She also testified that she was on her way to work and cannot imagine why she would have wanted to turn into P & J Meats.
*543 ¶ 5. The case was tried February 10-14, 1997, and the jury found in favor of Bell-wood. During the course of the trial Curtis objected to several statements made by the defense attorneys as prejudicial. The trial judge sustained the objections and instructed the jury to disregard the statements. Curtis filed motions for a judgment notwithstanding the verdict and a new trial, which the lower court denied. Curtis now maintains that the statements prejudiced the jury against her and appeals to this Court on these grounds.
ANALYSIS
I. DID THE TRIAL JUDGE COMMIT REVERSIBLE ERROR IN NOT GRANTING PLAINTIFF’S ORE TENUS MOTION FOR MISTRIAL AND PLAINTIFF’S MOTION FOR A NEW TRIAL BASED ON DEFENDANT’S ATTORNEY’S MISCONDUCT IN THEIR CROSS-EXAMINATION OF DR. MICHAEL F. ANGEL AND KATRINA DIANNA CURTIS.
¶ 6. Curtis alleges that Bellwood’s attorneys acted improperly in cross-examining Dr. Michael F. Angel, constituting attorney misconduct, prejudicing Curtis and requiring the granting of a new trial. Curtis brought forth Dr. Angel, Curtis’s doctor, to testify to the extent of Curtis’s injuries and possible need of future operations. On cross-examination Mr. Lewis, attorney for Bellwood, questioned Dr. Angel about Curtis’s split earlobes as follows:
Q. What about the split earlobes? Was that caused by the wreck?
A. Well, where she had been getting intermittent abscesses from where the glass was, that was caused by the wreck.
Q. What about the split earlobe on the right side? She wasn’t injured on the right side.
A. No, that’s not caused by the wreck.
Q. Do you know what caused that?
A. Not offhand.
Q. Did you know that the same day, June 27, 1996, that you repaired that split earlobe she charged her boyfriend with beating her up and pushing her around and pulling those earrings out of her ears?
¶ 7. Curtis objected and the trial judge sustained the objection and instructed the jury to disregard any reference to the question. Curtis also argued that the question was grounds for a mistrial. The judge denied the motion for a mistrial. Curtis asserts to this Court that the question was highly prejudicial and constitutes grounds for a new trial.
¶ 8. The issue of whether the surgery to repair Curtis’s earlobes was properly added to the damages from the car wreck comes second to the issue of liability. Liability must be determined before damages become pertinent. Since the jury preempted any discussion of damages by finding for the defendant, the issue of damages is irrelevant.
¶ 9. We agree with Curtis that the question was unprofessional and unsubstantiated, as well as objectionable. Nonetheless, the trial judge sustained the objection and instructed the jury to disregard the question and its response. Because this Court presumes that jurors will follow a trial court’s instructions, we generally find that a trial court’s admonishment to the jury to disregard an improper question and answer sufficient to cure any taint. Parker v. Jones County Community Hosp., 549 So.2d 443, 445-46 (Miss.1989); Jerry Lee’s Grocery, Inc. v. Thompson, 528 So.2d 293, 294-95 (Miss.1988); Henderson v. State, 403 So.2d 139, 140 (Miss.1981).
*544 ¶ 10. Curtis also objected to a statement by Mrs. Pauline Lewis, Bell-wood’s other attorney. Curtis also deemed this statement to be prejudicial and grounds for a mistrial. Mrs. Lewis was cross-examining Katrina Curtis and stated that she could pull a car into P & J Meats at thirty-five miles per hour. Specifically, she stated “Your Honor, I would request that we do that; that we recess and go to P & J Meats, and I’ll demonstrate.” She went on to state: “Your Hon- or, I’m ready. I mean I’ve already done it.” Curtis argues that this statement inferred that turning into P & J Meats at thirty-five miles per hour was possible, therefore prejudicing and biasing the jury against Curtis, preventing her from receiving her fair day in court.
¶ 11. However, we agree with Bellwood that whether it is possible to pull into P & J Meats at thirty-five miles per hours is not an issue in this proceeding. Regardless of whether it is possible to pull into P & J Meats at thirty-five miles per hour, the issue continues to be whether Curtis pulled into the left lane and struck Smith or vice versa. This question is a question of fact and was resolved by the jury. Furthermore, the trial judge sustained the objection and properly instructed the jury to disregard the statement. It has long been held that sustaining an objection and instructing the jury to disregard the statements is sufficient to preclude reversal for any improper question. Parker, 549 So.2d at 445-46. The trial judge did everything possible to avoid any resulting prejudice from the defense attorney’s improper statements. The trial judge did not abuse his discretion by refusing to grant a new trial based upon the improper statements. This issue is without merit.
II. DID THE JUDGE COMMIT REVERSIBLE ERROR IN NOT GRANTING PLAINTIFF A NEW TRIAL BASED ON THE FACTS PRESENTED TO THE COURT BY PLAINTIFF’S ATTORNEY, CARVER RAN-DLE, WHICH WERE THE SUBJECT OF POST-TRIAL HEARINGS, REGARDING JURY MISCONDUCT DURING JURY DELIBERATIONS AND THE AFFIDAVIT OF JUROR, BEULAH GREEN?
¶ 12. Curtis requested a new trial based upon the affidavit of a juror in the trial. In response to attorney Randle’s question of whether there were any discussions regarding whether or not the jurors gave any credibility to the statement made by Attorney Pauline Lewis about having turned into P & J Meat’s parking lot while going thirty-five miles per hour, Ms. Beulah Green’s affidavit stated in part:
The majority of the jurors openly discussed during our jury deliberations whether or not they believed that Attorney Pauline Lewis had made the turn into P & J’s Meats at thirty-five (35) miles per hour without braking as she had told us during the course of the trial.
I observed that the majority of the jury failed to follow Judge Sanders’ order to disregard the statements made by Attorney Pauline Lewis about her turning into P & J’s Meats at thirty-five(35) miles per hour without braking.
Curtis argued that juror Green’s affidavit showed that the jury failed to follow the court’s instructions to disregard the statement. Curtis further argued that she was denied a fair trial due to these prejudicial statements.
¶ 13. Assuming that the jurors did discuss whether or not Mrs. Lewis did or could have driven into P & J Meat’s driveway going thirty-five miles per hour, the fact remains that this point is not central to the issue at hand. Regardless of what Curtis was planning or trying to do, the *545 main issue is who moved into whose lane, causing the collision. We reiterate that the jury has already resolved this issue, and we are not going to second-guess their verdict.
¶ 14. Furthermore, Mississippi Rules of Evidence Rule 606(b) provides the key rule of law for the inspection of jury verdicts. This rule provides that:
Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury’s deliberations or to the effect of anything upon his or any other juror’s mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information ivas improperly brought to the jury’s attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes. (Emphasis added).
¶ 15. Thus, in Mississippi jurisprudence, a new trial is only appropriate when the jury received “extra record” facts that concern a material issue in dispute and they are qualitatively different from the evidence admitted at trial. Schmiz v. Illinois Cent. Gulf R.R. Co., 546 So.2d 693, 696 (Miss.1989); Salter v. Watkins, 513 So.2d 569, 571 (Miss.1987). The Mississippi Supreme Court has previously held that Rule 606(b) prevents the questioning of jurors regarding their diligence in following the trial court’s instructions. Folk v. State, 576 So.2d 1243, 1250 (Miss. 1991). The presumption is that jurors follow the court’s instructions. Parser, 549 So.2d at 445-46. Thus, where the court correctly instructs the jury, we will generally only reverse where the evidence is legally insufficient or the verdict is against the overwhelming weight of the evidence, neither of which are now raised as issues.
¶ 16. In the case at bar, based on the previous interpretation of Rule 606(b), any further inquiry into the jurors’ deliberations or granting of a new trial predicated on these allegations would be inappropriate because there were no “extra record” facts influencing the jury and any prejudice by the statements was cured by the lower court’s response. Additionally, the point in question is not a material issue in dispute. This issue is also without merit.
¶ 17. THE JUDGMENT OF THE SUNFLOWER CIRCUIT COURT IN FAVOR OF THE DEFENDANT BELLWOOD FARMS, INC. IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, IRVING, LEE, MOORE, AND PAYNE, JJ., CONCUR. DIAZ, J„ NOT PARTICIPATING.